## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SANDERLING MANAGEMENT LTD.,

        Plaintiff,

        v.

SNAP INC.,

        Defendant.

Case No. 1:20-cv-04627

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Sanderling Management Ltd. sues Defendant Snap Inc., the creator of the popular Snapchat application, claiming that Snapchat's "lens" and "filter" features infringe three of its patents in violation of the federal patent statute. Defendant now moves to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). [20]. Plaintiff opposes the motion to transfer and moves in the alternative to obtain venue discovery. [33]. For the reasons explained below, this Court grants Defendant's motion to transfer [20] and denies Plaintiff's request for venue discovery [33].

## I.    Factual Background

Defendant operates a camera and social media company and offers the popular Snapchat application, a social media platform through which users can share images and videos. [1] at ¶¶ 24–25. As part of its advertising business, Defendant offers "filters" and "lenses" to create branded images and videos for businesses and users

on Snapchat. *Id.* at ¶¶ 13–18, 24–29. According to the complaint, these filters and lenses bring a substantial source of revenue for Defendant, who has publicly stated that it monetizes its business primarily through advertising products like sponsored lenses and sponsored filters. *Id.* at ¶ 15.

Plaintiff is a limited company incorporated in, and maintaining its principal office in, the British Virgin Islands. *Id.* at ¶ 2. Plaintiff's founder, Michael Jacobs, invented the three patents at issue in the case; Jacobs in turn assigned his patent rights to Plaintiff. *Id.* at ¶¶ 8–9. Plaintiff claims that certain Snapchat features infringe the three patents, and accordingly, sues Defendant for patent infringement under 35 U.S.C. §§ 271 *et seq.* [1] at ¶¶ 30–105.

In moving to transfer, Defendant has submitted extrinsic evidence in the form of declarations from two of its employees. First, Yurii Monastyrshyn (a senior director of engineering for Defendant) submitted a declaration stating that: Defendant maintains its headquarters in Santa Monica, California; all heads of business operation for Defendant work in its Santa Monica office; 1,616 of Defendant's 3,797 employees work in Santa Monica; and that Defendant maintains three sponsored lens teams throughout the United States, the largest of which also works in Santa Monica. [21-1] at ¶¶ 3–6. Only one small sponsored lens team works in Chicago, but that team comprises only two employees whose managers work in Santa Monica. *Id.* at ¶ 6. Montastyrshyn also states that the developers responsible for engineering and coding sponsored lenses work only in Santa Monica. *Id.* at ¶ 8. Similarly, the vast majority of individuals knowledgeable about promotional

campaigns for filters and lenses, the design, development, and functionality of lenses and filters, the promotion and monetization of filters and lenses, and the sales, revenue, and expenses relating to the Snapchat application all work in Santa Monica. *Id.* at ¶ 9. According to Montastyrshyn, Defendant sells and markets Snapchat's filters and lenses to users throughout the United States and the world. *Id.* at ¶ 11.

Defendant's senior manager for advertiser solutions, Katelyn Kroneman, also submitted a declaration. [21-2]. In her declaration, Kroneman asserts that Defendant employs only about fifty people in its Chicago office, and that 90% of these employees work in sales and marketing. *Id.* at ¶ 3. Two employees in Defendant's Chicago office work on "pre-coding design of sponsored lenses for certain advertising clients," but neither codes Snap lenses, works on any aspect of Snap filters, accesses database repositories containing the Snapchat application source code as part of their day-to-day duties, or accesses technical documents detailing the functionality of Snapchat application lenses. *Id.* at ¶¶ 4–5. In addition, Kroneman states that no lens or filter developers or coders work in Defendant's Chicago office. *Id.* at ¶ 6. Similarly, no source code development for the Snapchat application, including lenses and filters, occurs in the Chicago office. *Id.* at ¶ 7.

On this record, Defendant moves to transfer venue under 28 U.S.C. § 1404(a) to the U.S. District Court for the Central District of California, the venue in which it maintains its Santa Monica headquarters. [20].

## II.     Legal Standard

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to transfer venue under § 1404(a) requires this Court to weigh both the convenience of the parties and various public-interest considerations. *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707–08 (7th Cir. 2020). This weighing "involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). As the moving party, Defendant bears the burden of demonstrating that the Central District of California is "clearly more convenient." *Id.* at 219–20.

Courts in this district utilize a three-part test in assessing whether to transfer a case under § 1404(a). This Court will grant transfer if: (1) venue is proper in both this Court and the transferee court; (2) transfer is more convenient for the parties and witnesses; and (3) transfer serves the interest of justice. *3DD LLC v. Creative Visions, Inc.*, No. 20-CV-03462, 2021 WL 83504, at *3 (N.D. Ill. Jan. 11, 2021); *Bland v. Edward D. Jones & Co., L.P.,* No. 18-CV-03673, 2020 WL 7027595, at *8 (N.D. Ill. Nov. 30, 2020); *Esposito v. Airbnb Action, LLC*, No. 20 C 2713, 2020 WL 6825685, at *1 (N.D. Ill. Nov. 20, 2020). The parties agree that venue is proper both in this Court and in the Central District of California, so this Court need only consider the

4

convenience of the parties and witnesses and the interest of justice.

## III.    Analysis

### A.    Convenience of the Parties and Witnesses

To evaluate the relative convenience of the venues, this Court considers the following factors (1) Plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *Bland*, 2020 WL 7027595, at *8; *Luedtke v. Firebird Trucking, Inc.*, No. 20-CV-03376, 2020 WL 8093510, at *1 (N.D. Ill. Nov. 16, 2020).

### 1.    Plaintiff's Choice of Forum

First, the Seventh Circuit has cautioned that unless "the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003). Notwithstanding, where a plaintiff does not reside in his chosen forum, or the forum has weak connections to the case, courts owe substantially less deference to the plaintiff's choice. *Knight v. Baxter Healthcare Corp.*, No. 20 C 1652, 2020 WL 6287404, at *2 (N.D. Ill. Oct. 27, 2020); *Post Media Sys. LLC v. Apple Inc.*, No. 19 C 5538, 2020 WL 833089, at *2 (N.D. Ill. Feb. 20, 2020); *Body Sci. LLC v. Bos. Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012).

As Plaintiff is incorporated and located in the British Virgin Islands, this district is not its home forum. [1] at ¶ 2. Nor does this district have any material connection to the operative facts giving rise to the litigation. As Defendant's

unrebutted evidence demonstrates, Defendant maintains only a small Chicago office, and none of these Chicago-based employees codes Snap lenses, works on any aspect of Snap filters, accesses database repositories containing the Snapchat application source code as part of their day-to-day duties, or accesses technical documents detailing the functionality of Snapchat application lenses. [21-2] at ¶¶ 3–7. Given the minimal connection between this case and this district, this Court affords Plaintiff's choice of forum substantially less weight.

### 2.      Situs of Material Events

In determining the situs of material events in patent infringement cases, courts "focus on the location of the infringer's principal place of business since these cases center on the infringer's activities and documents." *Post Media*, 2020 WL 833089, at \*2; *see also Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17 C 7216, 2018 WL 1616957, at \*2 (N.D. Ill. Apr. 4, 2018); *Qurio Holdings, Inc. v. DIRECTV, LLC*, No. 14-CV-7502, 2015 WL 1943278, at \*4 (N.D. Ill. Apr. 29, 2015).

Here, the situs of material events rests in Santa Monica, California, where Defendant maintains its principal place of business and employs its developers responsible for engineering and coding sponsored lenses, as well as most of the employees most knowledgeable about the design, development, and functionality of lenses and filters. [21-1] at ¶¶ 4–6, 8–9. This factor thus weighs strongly in favor of transfer.

### 3.      Access to Sources of Proof

Next, Defendant argues that because the relevant information resides at its

Santa Monica headquarters, this factor favors transfer to the Central District of California. [21] at 8–9. The location of records has, however, become a neutral factor in determining convenience, "given the ease of transferring and transporting documentary and digital evidence." *Luedtke*, 2020 WL 8093510, at *2; *Moore v. Magiera Diesel Injection Servs., Inc.*, No. 18-cv-3762, 2019 WL 2502029, at *9 (N.D. Ill. June 17, 2019). This factor thus weighs neither in favor nor against transfer.

### 4. Convenience of the Parties and Witnesses

#### a. The Parties

When considering the convenience of the parties, "a court should consider the parties' respective residence and their ability to bear the expenses of litigating in a particular forum." *Body Science*, 846 F. Supp. 2d at 996–97 (citing *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 776 (N.D. Ill. 1998)). This factor weighs in favor of transfer if Defendant must travel if the case proceeds here, but Plaintiff must travel regardless of whether this court grants transfer. *Id.* at 997 (citing *Ambrose v. Steelcase, Inc.*, No. 02-cv-2753, 2002 WL 1447871, at *4 (N.D. Ill. July 3, 2002)); *see Post Media*, 2020 WL 833089, at *3 (finding the convenience to the parties favored transfer because the defendant "need only travel if we deny transfer" while the plaintiff "must travel regardless of our decision"). That is the case here. Defendant would only need to travel if the case remains here, while Plaintiff must travel regardless. The convenience to the parties thus weighs in favor of transfer.

#### b. The Witnesses

The convenience of the witnesses constitutes the most important factor in the

transfer analysis. *Knight*, 2020 WL 6287404, at \*3; *Body Science*, 846 F. Supp. 2d at 995–96. This factor similarly weighs heavily in favor of transfer. The unrebutted evidence shows that Defendant's key business and technical witnesses relating to Snapchat's lenses and filters all reside in Santa Monica. [21-1] at ¶¶ 4–10. In contrast, Plaintiff identifies no key witnesses in this district, *see* [33] at 13–14, and does not dispute Defendant's assertion that the inventor of the patents, Michael Jacobs, lives in Israel, and must therefore travel regardless, *see* [21] at 14; *see generally* [33].

In sum, in assessing the convenience element of the transfer analysis, the balance of the factors weighs in favor of transfer to the Central District of California.

### B.      Interest of Justice

This Court must also consider whether the transfer serves the interest of justice. *Research Automation*, 626 F.3d at 978 ("The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system."). In analyzing the interest of justice, this Court considers: (1) the speed at which the case will proceed to trial in the transferor and potential transferee forums; (2) each court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue. *In re Ryze*, 968 F.3d at 708. A discussed below, the balance of these factors also weighs in favor of transfer.

### 1.      Speed to Trial

The first of these factors—speed to trial—is neutral. Defendant argues that

8

Central District of California is faster than this district in terms of "time-to-trial," [21] at 15, but such statistics are inherently imprecise, *Fed. Trade Comm'n v. Big Dog Sols. LLC*, No. 16-CV-6607, 2016 WL 5391391, at *4 (N.D. Ill. Sept. 27, 2016). Moreover, this Court is more than willing to set an early and firm trial date for the parties within the average "time-to-trial" metric in the Central District of California.

### 2. Familiarity with Applicable Law

The next factor—familiarity with applicable law—is similarly neutral. This Court and the transferee court have equal familiarity with matters involving federal law, including patent infringement. *Bureau of Consumer Fin. Prot. v. Fifth Third Bank, Nat'l Ass'n*, No. 20-CV-01683, 2021 WL 534658, at *5 (N.D. Ill. Feb. 12, 2021) ("Since this action is brought under federal law, 'a judge in a particular district has no inherent advantage over [a] judge in other districts.'") (quoting *SEC v. Kasirer*, No. 04 C 4340, 2005 WL 645246, at *3 (N.D. Ill. Mar. 21, 2005)); *RAH Color Techs. LLC v. Xerox Corp.*, No. 17-CV-06813, 2018 WL 9539781, at *4 (N.D. Ill. Sept. 24, 2018) ("The competing fora's respective familiarities with the law is a non-issue in a patent infringement action, where each potential forum is assumed to have the same familiarity with the applicable law.").

### 3. Desirability of Resolving Controversies in Each Locale and Relation of Each Community

When analyzing these factors in transfers involving patent infringement, the forum where the accused infringer researched, developed, tested, marketed, and sold the accused product has the greatest interest. *RAH Color*, 2018 WL 9539781, at *4; *see also Heil Co. v. Curotto Can Co.*, No. 02-cv-782, 2004 WL 725737, at *3 (N.D. Ill.

Mar. 30, 2004) ("Illinois does not have a strong interest in adjudicating a case between two companies neither of which is located in this State, and California has a greater interest in resolving a patent infringement action involving a company headquartered in California."). As discussed above, the technical and business aspects of the allegedly infringing Snapchat features all center in Santa Monica. Moreover, the Central District of California has a "significant interest in addressing a grievance against a corporation located within their jurisdiction." *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1056 (N.D. Ill. 2012). And although Defendant markets its features to users and companies in this district, it also does so throughout the country and the world. [21-1] at ¶ 11. Thus, this district does not have any greater interest than any other in resolving the case. *See Lewis*, 841 F. Supp. 2d at 1056 (finding that the "Northern District of Illinois's interest is entitled to diminished weight, as it is an interest common to the many districts in which Grote sells its products"); *see also Post Media*, 2020 WL 833089, at *4 ("While the product was distributed throughout the United States—and in Illinois—the design, engineering, and marketing of the accused functionalities was conducted by a company based in California."). Thus, this Court finds that the Central District of California has both the strongest relationship to the case and the strongest interest in resolving the case.

In sum, like the "convenience" factors, the "interest of justice" factors similarly favor transfer. Accordingly, Defendant has met its burden in demonstrating that the Central District of California is "clearly more convenient." *Coffey*, 796 F.2d at 219–

10

20.

### C.     Venue Discovery

This Court finally addresses Plaintiff's request for venue discovery. Plaintiff claims it needs venue discovery to test the evidence set forth in Defendant's declarations. [33] at 16. The decision to allow limited discovery into venue rests within this Court's discretion. *See BillingNetwork Patent, Inc. v. Modernizing Med., Inc.*, No. 17 C 5636, 2017 WL 5146008, at *4 (N.D. Ill. Nov. 6, 2017). This Court will not exercise that discretion here, however, as Plaintiff has not persuaded this Court that additional discovery would alter the analysis in this case. Defendant has already provided sworn declarations concerning the locations of relevant witnesses and documents; Defendant has also produced to Plaintiff a list of key witnesses in its initial disclosures, stating that each of them lives in California. [42] at 5 n.3, 17. Plaintiff does not suggest that these declarations or disclosures are false, nor does it identify any concrete information that it needs to support its venue arguments. This Court therefore finds venue discovery unwarranted in this case. *See, e.g.*, *BillingNetwork*, 2017 WL 5146008, at *4 (denying venue discovery where the defendant had already provided venue-related discovery and the plaintiff did not "suggest that Defendant's counsel refused to provide any requested information" nor identified "concrete information that it would seek to support venue").

## IV.    Conclusion

Because transfer serves the convenience of the parties and the witnesses as well as the interests of justice, this Court grants Defendant's motion to transfer to

the Central District of California [20] and denies Plaintiff's request for venue discovery [33]. This Court grants Plaintiff's motion for leave to file a reply [74] but will leave it to the transferee court to consider the merits of Defendant's motion to dismiss [17], Plaintiff's motion to compel [38], Defendant's motion for entry of source code inspection protocol [53]; [55], and Plaintiff's motion for sanctions and to modify the case management order [65]. The Court strikes the 3/8/21 motion hearing date. The Clerk is directed to transfer this case forthwith to the United States District Court for the Central District of California.

Dated: March 5, 2021

Entered:

John Robert Blakey
United States District Judge